## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 12 2018, 10:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

David W. Stone IV
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Matthew B. MacKenzie
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Baris L. Joyner,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

December 12, 2018

Court of Appeals Case No.
18A-CR-1570

Appeal from the Madison Circuit Court

The Honorable Mark K. Dudley, Judge

Trial Court Cause No.
48C06-1401-FB-85

**Bailey, Judge.**

# Case Summary

[1] Baris L. Joyner ("Joyner") appeals following the revocation of his probation. Arguing that there is insufficient evidence supporting certain alleged grounds for revocation, Joyner asks that we remand for reconsideration of his sanction.

[2] We affirm.

# Facts and Procedural History

[3] In 2014, Joyner pleaded guilty to several offenses, and was sentenced to thirteen years in the Indiana Department of Correction with seven years executed and six years suspended. He was placed on probation in February 2017.

[4] In August 2017, the Madison County Probation Department filed a Notice of Violation of Probation, which was later amended. The notice alleged that Joyner had failed to (a) timely report to probation; (b) pay court costs; (c) pay probation fees; and (d) maintain employment. Joyner later admitted to these allegations. The notice also alleged that Joyner had committed several new criminal offenses on January 26, 2018, February 27, 2018, and March 12, 2018.

[5] An evidentiary hearing was held on May 16, 2018, and June 6, 2018, largely focusing on the specific allegations of criminal conduct. Officer John Owen from the Madison County Sheriff's Department ("Officer Owen") testified that he saw a vehicle run a red light on January 26, 2018. Officer Owen attempted a traffic stop, and the vehicle accelerated. With lights and siren activated, Officer Owen followed the vehicle for about one mile. The vehicle eventually slowed,

and the male driver exited while the vehicle was still in gear. The vehicle then struck a telephone pole. The driver fled on foot, and Officer Owen chased the driver for two or three minutes, eventually losing sight of him. Officers later spoke with the owner of the vehicle, who said that she had loaned the vehicle to Joyner. Officer Owen then searched police records for a photo of Joyner. Officer Owen identified Joyner as the person who had fled from the vehicle.

[6] After the pursuit, Officer Owen would sometimes patrol the same area. While patrolling the area on February 27, 2018, Officer Owen saw Joyner on the balcony of a second-floor apartment. Officer Owen spoke with someone from the lower apartment who said Joyner lived upstairs. At that time, there was a warrant out for Joyner's arrest. Law enforcement knocked on the door and tried to contact Joyner with a loudspeaker, but Joyner did not answer. Law enforcement then obtained and executed a warrant. There was a young child crying on a bed, and Joyner—the only other occupant—was in the bathroom. Joyner was arrested. At that time, he had $978 in his pocket. The apartment had a strong odor of marijuana, and law enforcement obtained a warrant to search the residence. Law enforcement then found an assault rifle under the mattress of the bed where the child was found. Law enforcement also found a suitcase with a handgun and 141.5 grams of a substance that Officer Owen believed was marijuana, and that a field test indicated was marijuana.

[7] About two weeks later, on March 12, 2018, Officer Joseph Hancock of the Fisher's Police Department ("Officer Hancock") saw a vehicle straddling lanes. Officer Hancock stopped the vehicle and asked the occupants for identification.

The front passenger—who appeared nervous—wrote down Brandon Joyner. An ensuing search revealed a jar under the front passenger seat that contained approximately sixty-six grams of a substance that Officer Hancock believed was marijuana, and that a field test indicated was marijuana. Elsewhere in the vehicle, there was a container with about 17 grams of that substance. There was also a grinder in the driver's door. At some point, the front passenger said that "all the marijuana was his." Tr. Vol. II at 58. That person—who Officer Hancock identified as Joyner—later admitted that he was not named Brandon.

[8] With respect to the specific allegations of criminal conduct, the trial court determined that Joyner had committed criminal offenses on January 26, 2018, February 27, 2018, and March 12, 2018. As to January 26, 2018—the date of the pursuit—the trial court determined that Joyner had committed Resisting Law Enforcement and Operating a Motor Vehicle without Ever Receiving a License. As to February 27, 2018—the date of the apartment search—the trial court determined that Joyner had committed Dealing in Marijuana, Maintaining a Common Nuisance, Neglect of a Dependent, and Unlawful Possession of a Firearm by a Serious Violent Felon. As to the traffic stop on March 12, 2018, the trial court determined that Joyner had committed Synthetic Identity Deception and Possession of Marijuana, but not Possession of Paraphernalia. In reflecting on Joyner's conduct, the trial court noted that it had not taken Joyner "much time to go back to [his] older ways." *Id.* at 81. The trial court also twice remarked that Joyner had "committed additional

felonies." *Id.* The trial court ultimately decided to revoke five of the six years of probation, and placed Joyner in the Indiana Department of Correction.

[9] Joyner now appeals.

# Discussion and Decision

[10] "In appeals from trial court probation violation determinations and sanctions, we review for abuse of discretion." *Heaton v. State*, 984 N.E.2d 614, 616 (Ind. 2013). The trial court abuses its discretion when its "decision is clearly against the logic and effect of the facts and circumstances . . . or when the trial court misinterprets the law." *Id.* In general, "[p]robation revocation is a two-step process. First, the court must make a factual determination that a violation of a condition of probation actually occurred." *Woods v. State*, 892 N.E.2d 637, 640 (Ind. 2008). With respect to this initial determination, "[a] probation hearing is civil in nature," *Braxton v. State*, 651 N.E.2d 268, 270 (Ind. 1995), and the State "must prove the violation by a preponderance of the evidence," Ind. Code § 35-38-2-3(f). If the court identifies a violation, then the court next "determine[s] the appropriate sanctions for the violation." *Heaton*, 984 N.E.2d at 616. Depending on the nature of the violation, the court "may decide to continue the probationer on probation without modification." *Id.* at 618. Nonetheless, "[t]he violation of a single condition of probation is sufficient to revoke probation." *Luke v. State*, 51 N.E.3d 401, 421 (Ind. Ct. App. 2016), *trans. denied*.

[11] The instant probation order required that Joyner "obey all municipal, state, and federal laws, and behave well in society," App. Vol. II at 98—and even if it had not so stated, "refrain[ing] from committing additional crime is one of the conditions of probation, regardless of whether the probation order mentions the requirement," *Bane v. State*, 579 N.E.2d 1339, 1340 (Ind. Ct. App. 1991), *trans. denied*. Joyner does not dispute that he violated conditions of probation. He instead argues that there was insufficient evidence supporting certain identified violations. According to Joyner, because there were fewer violations, we should remand to give the court the opportunity to re-evaluate the sanction.

[12] Joyner focuses only on the grounds for revocation related to the search of the apartment, arguing that the State failed to prove those allegations with sufficient evidence. Yet, even assuming *arguendo* that there was insufficient evidence to support those allegations, the following unchallenged grounds remain: (a) the admitted failure to timely report to probation, pay fees and costs, and maintain employment; (b) criminal conduct—committed approximately one year after being placed on probation—where Joyner fled law enforcement, abandoning a vehicle that was in gear and then crashed into a telephone pole; and (c) months later, an incident where Joyner possessed marijuana and gave the wrong name to police. These unchallenged grounds are serious acts that could be punishable as two Level 6 felonies (Resisting Law Enforcement and Synthetic Identity Deception); a Class B misdemeanor (Possession of Marijuana); and a Class C misdemeanor (Operating a Vehicle without Ever Receiving a License). *See* I.C. §§ 35-44.1-3-1, 35-43-5-3.8, 35-48-4-11 & 9-24-18-1.

[13]     Ultimately, "[p]robation is a matter of grace left to trial court discretion, not a right to which a criminal defendant is entitled." *Prewitt v. State*, 878 N.E.2d 184, 188 (Ind. 2007). In this case, the trial court expressed concern about how quickly Joyner had reverted to criminal behavior, and observed that Joyner had "committed additional felonies." Tr. Vol. II at 81. Upon review, we are unconvinced the court would have imposed a lesser sanction had it concluded that Joyner had violated his probation in only the aforementioned ways. *See* Ind. T.R. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."); *cf. Figures v. State*, 920 N.E.2d 267, 273 (Ind. Ct. App. 2010) (observing that the "trial court did nothing to indicate it would have reached a different decision had it considered only the two unchallenged violations"). Therefore, we decline to disturb the sanction imposed by the trial court.

[14]     Affirmed.

Bradford, J., and Brown, J., concur.